RUTH NAOMI URSETH, Widow, and NAOMI ANDREA URSETH and JACQUELINE JANE URSETH, Minor Daughters (Claimants), v. ENCYCLOPEDIA BRITANNICA, INC. (Employer), and THE TRAVELERS INSURANCE COMPANY (Insurer), Appellants.—124 S. W. (2d) 1101.

Division Two, February 21, 1939.

1084

*Jones, Hocker, Gladney & Grand* and *Web A. Welker* for appellants.

*J. L. London* for respondents; *Leahy, Walther, Hecker & Ely* of counsel.

BOHLING, C.—The Encyclopedia Britannica, Inc., the employer, and The Travelers Insurance Company, the insurer, present this review of proceedings instituted before the Workmen's Compensation Commission by Ruth Naomi Urseth, the widow, and Naomi Andrea Urseth and Jacqueline Jane Urseth, the minor daughters of Olaf A. Urseth, who lost his life in an accident arising out of and in the course of his employment.

The main contentions presented revolve around the correctness of the amount of the award—$11,385—for death benefits.

In 1935 the employer had its general offices at Chicago, Illinois, with seven branches located in the United States, one being located at Kansas City, Missouri. Early in 1936 it increased the number of branch offices, establishing one in St. Louis on January 30, 1936. Mr. Urseth was employed under a contract bearing date of February 18, 1936, and signed by John B. Slater, manager of the St. Louis office, to work on a commission basis out of said office for a term expiring January 31, 1937. The employer operated throughout the working days of the year. Mr. Urseth was assigned to territory in southwest Missouri, territory formerly under the jurisdiction of

the Kansas City office. Mr. Slater testified that Mr. Urseth, under a verbal agreement, received advance payments of $35 weekly, which were chargeable against his commissions as earned, and that he started to work about March 15, 1936. The accident and Mr. Urseth's death occurred April 16, 1936. The Workmen's Compensation Commission, therefore, was unable to compute claimants' compensation under subsection (a) of Section 3320, Revised Statutes 1929, Mo. Stat. Ann., p. 8258 (cf. Sec. 3319, subsec. (b), R. S. 1929, Mo. Stat. Ann., p. 8254), on the basis of annual earnings actually received by Mr. Urseth from his employer. Claimants contend that subsection (c), while appellants contend that subsection (d) of said Section 3320 governs the computation of the allowable compensation. Said subsections read:

·''(c)  If the injured person has not been engaged in the employment of the same employer for the full year immediately preceding the accident, the compensation shall be computed according to the annual earnings which persons of the same class in the same employment and same location (or if that be impracticable, of neighboring employments of the same kind) have earned during such period.

''(d)  As to employees in employments in which it is the custom to operate throughout the working days of the year, the annual earnings, if not otherwise determinable, shall be regarded as 300 times the average daily earnings in such computation.''

Appellants say, applying said subsection (d), the total commissions earned by Mr. Urseth—$150.87—''should be divided by the fifty-one working days in the period from February 15th, inclusive, to and including April 15, 1936,'' giving an average daily wage of ''$2.96,'' which, when multiplied by 300 and the product divided by 52, gives an average weekly wage of ''$17.07,'' entitling claimants to compensation for death benefits in the sum of ''$3,414.00.'' They rely on Coble v. Scullin Steele Co. (Mo. App.), 54 S. W. (2d) 777, 778(1), and Jackson v. Curtiss-Wright Airplane Co., 334 Mo. 805, 814, 68 S. W. (2d) 715, 720(11). These cases differ in their material facts from the instant case. In each the employee was employed at an agreed wage of a fixed amount. So, too, in Hartman v. Union Electric L. & P. Co., 331 Mo. 230, 238, 239, 53 S. W. (2d) 241, 245, stating, in discussing the various subsections under Section 3320, supra, that: ''Subdivision (d) itself . . . by implication applies to persons who have not worked a full year before injury, but in a particular business which had not been operating a full year but which, by custom, was an all-year business.''

In the instant case the employer had been operating for a full year. Mr. Urseth's earnings were on a commission basis and not a fixed wage or salary per hour, day, week, or month. He was not in the employer's employ a sufficient length of time to necessarily fur-

nish a basis for the computation of compensation solely upon his earned commissions. The record indicates his commissions aggregated $150.87 for approximately four weeks of actual time devoted to the earning of commissions; which, as well as his weekly advancements of $35, although chargeable against commissions as earned, tends to refute that he and his employer were proceeding upon a basis of average weekly earnings of $17.07. We think it could not be successfully maintained that Mr. Urseth's dependents should be deprived of compensation if the accident occurred before he had earned a commission. Edwards v. Ethyl Gasoline Corp. 342 Mo. 98, 112 S. W. (2d) 555, 561(7), and Casebolt v. International Life Ins. Co. (Mo. App.), 42 S. W. (2d) 939, 941, recognize that the computation of compensation under the act is not necessarily restricted to the actual earnings of a new or inexperienced employee who suffers death or injury within the first year of his employment. [See, also, Bietsch v. Midwest Piping & Supply Co. (Mo. App.), 86 S. W. (2d) 187, 189(1).] At the hearings before the commission the appellants took the position that subsection (c) applied, which theory was adopted by the referee conducting the hearings and by the commission in its final award. They first contended that subsection (d) applied in their application for review by the full commission under Section 3341, Revised Statutes 1929 (Mo. Stat. Ann., p. 8274). We rule the point against appellants.

■ Certain exhibits, over exceptions saved, were admitted in evidence on the theory they constituted admissions by the employer against interest. They related to the factual issue of "the annual earnings which persons of the same class in the same employment and same location (or if that be impractical, of neighboring employments of the same kind)" had earned during the year immediately preceding Mr. Urseth's death. One exhibit, a letter dated October 28, 1936, and signed by E. H. Powell, president of the employer corportation, was to the effect it was difficult to give "the average earnings of people in our organization doing the kind of work Mr. Urseth was doing;" that he knew Mr. Slater considered Mr. Urseth "to be away above the average as a salesman and he (Slater) was dependent on him to take a rather important place in our St. Louis office;" and that good salesmen earned from $75 to $150 a week; closing with regret that the writer could not be more definite. Another exhibit, a letter dated December 28, 1936, and signed by A. J. Matson, the operating manager of the employer's home office, read: "Attached is a corrected statement of earnings for six salesmen who in our opinion would be comparable to O. A. Urseth, deceased." The third exhibit is the referred to "corrected statement." The two letters were addressed to claimants' attorneys. The statement disclosed annual earnings of specified employees for the year immediately pre-

ceding Mr. Urseth's death, as follows: T. R. Counter $5,227.09; C. E. Jacobson $5,049.90; B. R. Strickland $2,416.56; C. R. Allen $2,969.59; M. F. Boucher $2,950.62 and H. M. Currie $3,212.90.

Appellants say, among other things, that the statements in the letters are hearsay, especially as to the insurer as it must pay any final award.

The Commission selected employees Allen and Boucher, having average annual earnings of $2,960.10, as representative of the class of employees comparable to Mr. Urseth within the meaning of said subsection (c); and computing compensation on an average weekly wage of $56.92 awarded death benefits of $11,385, payable $20 weekly as provided by law.

Mr. Matson testified that the statement reflecting the earnings was compiled by a Miss Feldman, who worked on the employer's salesmen's commission ledger; that he had nothing to do with the compilation of the figures and did not know for a fact whether they were correct. Miss Feldman established the correctness of the figures in the statement with the commission ledgers; but on cross-examination testified that the commissions earned by the sales representatives depended upon the agreement entered into between the manager of the branch office and the representative; that the commissions, while usually the same, would vary slightly; that she did not know with respect to the men whose earnings were reflected in the exhibit anything about their individual experience or ability other than her own conclusions from the figures sent in; that she did not know the agreement any individual salesman was working under; that she prepared the exhibit at Mr. Matson's request and choose the men whose earnings were shown for no particular reason; that, for instance, she selected Mr. Counter because he seemed to be a prominent salesman; that she had to choose salesmen who had been working in 1935 and 1936 (covering the year preceding April 15, 1936); that she selected salesmen who were promising, salesmen somewhat better than the average; that as to some of them she could not say when they started or in what territory they were actually working, although we understand they worked for at least a part of the year involved out of the Kansas City office; that she could not name any other salesman of what she might conceive to be Mr. Urseth's class who had earned commissions exceeding the figures on said statement for the year preceding April 15, 1936; that the Kansas City territory had accounts covering about eighty salesmen; and, not giving a definite answer, that the average of the other accounts was around $500, which, as we read her testimony, did not attempt to give consideration, among other possible factors, to the length of time devoted by the individual employee to the employer's service.

Under Section 3325, Revised Statutes 1929 (Mo. Stat. Ann., p.

8262), the insurer in this case is primarily and directly liable while the employer is only secondarily and indirectly liable. We assume, but refrain from holding, that the statements bearing on Mr. Urseth's earning capacity were admissible against the employer on the theory they constituted admissions against interest. Mr. Matson admitted he had nothing to do with the compilation of the figures reflecting the earnings of the six employees and refused to attest their correctness. The testimony of Miss Feldman with reference to the compilation of the figures stamps the statement in Mr. Matson's letter as hearsay in so far as the insurer is concerned; and the same is true of Mr. Powell's statement that Mr. Slater considered Mr. Urseth "away above the average as a salesman" etc. Claimants rely upon these statements, stressing the Powell letter, to establish the essential factual issues involved under subsection (c), supra. They point us to no other showing of record with respect to Mr. Urseth's ability as a sales representative of the employer. There is testimony of record that a sales representative's earnings depend upon his individual ability and that salesmen usually improve with experience. This, together with the legitimate inferences to be drawn from Mr. Urseth's actual earnings of $150.87 for the (approximately) four weeks he actually devoted to earning commissions and the weekly advance payments of $35, we think does not remove from the field of speculation, surmise and conjecture, in so far as the insurer is concerned, an award based on the average weekly earnings of $56.92 of employees Allen and Boucher. [Consult Stapleton v. Gunn (Mo. App.), 69 S. W. (2d) 1104, 1106(3).]

Based upon the exhibit attached to Mr. Matson's letter, which discloses average annual earnings in excess of $3600 for the six specified employees of the employer, appellants make, but we understand they do not necessarily stress, the point that deceased was within the exclusion provision of Section 3305, subsection (a), Revised Statutes 1929 (Mo. Stat. Ann., p. 8238), to the effect that the word employee "shall not include persons whose average annual earnings exceed three thousand six hundred dollars." Since the commission based its award on actual earnings of $2,960.10 the point is not for review.

Examining the record made before the Commission, we deem it unnecessary to discuss other issues presented. Some, as pointed out by claimants, appear not to have been presented below. Others appear to be of such nature as to permit of their ready elimination upon further hearing.

Accordingly we reverse the judgment and remand the cause for proceedings in conformity hereto. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by Bohling, C., is adopted as the opinion of the court. All the judges concur.