RALPH METZINGER, Respondent, v. H. A. DAILEY, INC., Appellant.—
No. 40665.—216 S. W. (2d) 480.

Division One, December 13, 1948.

Rehearing Denied, January 7, 1949.

*E. C. Hartman, Albert I. Graff* and *Malcolm I. Frank* for appellant.

690

*Mark D. Eagleton* and *Wm. H. Allen* for respondent.

[481] DALTON, C.—Action for damages for personal injuries alleged to have been sustained by reason of defendant's negligence. Verdict and judgment were for plaintiff for $40,000 and defendant has appealed.

Plaintiff was employed by defendant as an ironworker foreman in construction work in the City of St. Louis. He was seriously injured on June 25, 1946, by reason of the falling of the elevator of a hoist which had been erected by defendant and was being used in connection with the construction of a building.

The essential issue presented on this appeal concerns the application of the Workmen's Compensation Law, which plaintiff alleged would be applicable, except that his earnings exceeded the maximum fixed by Sec. 3695(a) R. S. 1939. Defendant-appellant contends that the court should have directed a verdict in its favor, because

on "the undisputed evidence . . . plaintiff was an employee whose average annual earnings did not exceed $3600."

Plaintiff began work for defendant, as an ironworker in February 1946 On March 29, 1946, he became an ironworker foreman and was working as such when he was injured. As an ironworker foreman, the plaintiff was paid the prevailing union wage scale in the City of St. Louis, which scale, prior to May 1, 1946, was $2.02½ per hour, or $16.20 for an eight hour day. After that date, the prevailing wage scale was $2.25 per hour or $18.00 per day for an eight hour day. Plaintiff earned $972.55 between March 29, and June 25, 1946. His average weekly earnings as an ironworker foreman, working 23 to 43 hours per week, was $74.81 for the whole period, or $83.59 per week after the increase in wages.

The evidence further tended to show that during a period of five years, prior to June 25, 1946, there was work available for ironworker foremen to work throughout the working days of the year; that all could work every day at the union scale, if they wanted to; that, when a man left one contractor, because work had ceased for any reason, he reported back to the business agent or secretary of the union and was sent out immediately on a new job with another contractor without loss of time; and that the average annual earnings of men in the craft, during the five year period, were in excess of $3600.

Plaintiff offered four witnesses, who had been ironworker foremen for 3, 10, 21 and 25 years, respectively. They had worked for construction contractors in the City of St. Louis and, during the five year period, prior to June 25, 1946, their "annual earnings," figured on a calendar year basis, far exceeded $3600. Each witness [482] earned in excess of $3600 in 1946 and about half of that amount prior to June 25, 1946. One had averaged over $4000 per year for 6 or 8 years. One had worked for sixteen different contractors in one year and another for 12 to 15 contractors in a single year. One had worked for one company for four years. There was a shortage of ironworker foremen and, if work was not available with one contractor on account of the weather or for any other cause, there was some kind of work immediately available with another contractor, in either outside or inside work. None of plaintiff's witnesses, other than plaintiff, had worked for defendant within the five year period prior to June 25, 1946. Defendant did not deny or dispute the testimony of these ironworker foreman witnesses concerning their earnings, but objected to its competency and relevancy to any issue in the case.

Defendant offered the testimony of two ironworker foremen employed by it, Schrader and Panchot, together with the record of each employee's earnings. Schrader had worked for defendant four and one-half years, three and one-half years as an ironworker foreman.

He worked steadily for defendant, although he put in a day or so for others once in a while. He was paid the union scale before and after May 1, 1946. In 1946, he earned $3830.30; in 1945, $3096; and in 1944, $2600; and he did not exceed $3600 in 1943. The records showed that he worked 228 days (not all full days) from June 26, 1945 to June 25, 1946 and earned $3405.75; from June 26, 1944 to June 25, 1945, he worked 231 days or parts of days and earned $3403.15; and from June 26, 1943 to June 25, 1944, he worked 96 days as a foreman (he was not a foreman during the entire period) and he earned $1139.85. Schrader had no yearly contract with defendant. When defendant finished a job, Schrader was free to go to some other contractor or wait until defendant began another job. There was work with other contractors, if he wanted to do it, and he could work at nights for others, if he wanted to, or he could stay at home, work around home or do something else. Defendant's work for ironworker foremen had, at times, been as low as 143 days a year and witness had gone five or six weeks, without working. Sometimes he worked "off and on" for defendant at his own choice.

Panchot worked for defendant for 224 days during the period from June 25, 1945 to June 25, 1946. He drew the union scale and earned $3548. During this period he worked a couple of days for another employer. He worked a part of each week, except for the period from December 12, 1945 to January 9, 1946 when he was off for some cause, perhaps hunting, a strike or bad weather. Schrader did not work during the same period. From June 25, 1944 to June 25, 1945, Panchot worked 228 days and earned less than $3600. From June 25, 1943 to June 25, 1944, he worked 154 days and earned $1883.50 and from June 25, 1942 to June 25, 1943, he worked 118 days and earned $1411.85. There were days when he "just didn't go to work." He said that he had a clubhouse and was single and could stay off from work and enjoy himself when he wanted to. He had no contract by the year with defendant and he had the choice of resuming work each week or reporting to the union to go out on another job with another contractor. Both Schrader and Panchot could have found work elsewhere when defendant was not operating, but they chose to wait until defendant had work for them.

The testimony of defendant's witnesses was not controverted in the trial nor here, except that respondent insists that neither Panchot nor Schrader worked steadily; and that their testimony was insufficient to support a finding of the average annual earnings of persons of the same class in the same employment and location.

Instruction 1, in part, conditioned a verdict for plaintiff upon a finding ". . . that it was the custom in said employment to operate throughout the working days of the year . . . and that the average annual earnings of ironworker foreman in the same class in

the same employment in the City of St. Louis during the year immediately preceding plaintiff's injury were in excess of $3600 per year . . . ''

Section 3695(a) R. S. 1939 defines the word ''employee,'' as used in [483] the Workmen's Compensation Law, and adds these words ''but shall not include persons whose *average annual earnings* exceed three thousand six hundred dollars.'' (Italics ours). Appellant contends that Sec. 3695 is ''an independent statute and not dependent on nor necessary to be harmonized'' with Sec. 3710 R. S. 1939; and that, since plaintiff had not worked one year for defendant and had not earned more than $3600, he was under the Act as a matter of law and entitled to its benefits. Section 3695 does not define ''earnings,'' nor provide how they shall be determined, but another section, Sec. 3710, prescribes the basis for computing compensation. In the case of Sayles v. Kansas City Structural Steel Company, 344 Mo. 756, 128 S. W. (2d) 1046, this court (en banc) construed the two sections together. In that case the employee, although long employed, had only been regularly employed on a full time basis for two years and seven months at a fixed salary of $78 per week. He drew a regular salary whether he worked all of the time or not. He could have quit or been discharged at any time. The plant at which he worked operated continuously throughout the year. This court held that paragraph (a) and (b) of Sec. 3320 R. S. 1929 (now Sec. 3710) must be construed with Sec. 3305 R. S. 1929 (now Sec. 3695), but the court held that the ''average annual earnings'' and not the preceding year's earnings should be used in determining whether plaintiff was under the Compensation Law. The court said: ''Be this as it may the evidence justified the conclusion that there was a change made in June, 1934, not only in the character of Sayles' employment as to regularity and permanency and the manner of pay, but also, to some extent at least, in the nature of his duties. We think that, clearly, paragraphs (a) and (b) of Sec. 3320 apply and that in determining Sayles' 'average annual earnings' as mentioned in the exclusion clause of Sec. 3305, only the time from June, 1934, to his death, during which he was employed in the same grade of employment as at the time of the accident, can be considered. Thus considered his average annual earnings exceeded $3600 per year as the Commission found. . . . Exclusion from the Act is based on the 'average annual earnings.' Sec. 3305 does not define or point out how to determine 'annual earnings.' Sec. 3320 does. If payment of benefits must be based upon annual earnings, as determined under Sec. 3320, it would seem inconsistent and illogical to use a different measuring rod in determining 'average annual earnings' in applying the exclusion clause of Sec. 3305, when the statute does not so command, as we think it does not.''

Appellant disagrees with the reasoning in the Sayles' case and says that it was not necessary for the court to consider the sections together to reach a decision in that case, because the plaintiff had been employed for more than two years. Appellant insists that the sections mentioned refer to different matters—"average annual earnings" and "annual earnings" and that the holding (that the sections must be harmonized and construed together) conflicts with the holding that the law should be liberally construed so as to best effectuate its purpose and extend its benefits to the largest possible class. Sayles v. Kansas City Structural Steel Co., supra; Maltz v. Jackoway-Katz Cap Co., 336 Mo. 1000, 82 S. W. (2d) 909. Appellant further insists that, since plaintiff had not earned more than $3600 and had not worked one year for this employer before his injury, he could not be excluded from the benefits of the law, if effect be given to the plain language expressing the intention of the legislature. We think the sections must be construed together and so hold. Sayles v. Kansas City Structural Steel Co., supra. The mere fact that plaintiff had not worked a year and had not earned $3600 would not as a matter of law bring him under the Workmen's Compensation Law.

Appellant further points to defendant's evidence, towit, that, defendant only used ironworker foremen for placing iron for reinforced concrete work and work of that kind; that, if defendant had five jobs requiring iron work, it had jobs for five ironworker foremen; that ironwork was not a part of each and every job; and that, if during 1942 and 1943, it had only 136 days work for all ironworker foremen that [484] were employed, it could be due to the fact that the company didn't have any jobs requiring ironworker foremen. Appellant says "defendant did not operate and use ironworker foremen every working day of the year, but used them only on such days as they needed them in their cement construction work." See, Jackson v. Curtiss-Wright Airplane Co., 334 Mo. 805, 68 S. W. (2d) 715, 719; Biswell v. St. Louis-S. F. R. Co., (Mo. App.), 49 S. W. (2d) 203. In the case of Jackson v. Curtiss-Wright Airplane Co., supra, there was no direct evidence that the company operated during the whole year and no evidence that it did not so operate, but the court found that certain facts and circumstances in evidence were sufficient to prove (and so sustained the finding) that appellants' plant was operated during the whole year.

Appellant says that, if Sec. 3710 is construed with Sec. 3695, then subdivision (c) of Sec. 3710 applies in this case. It is as follows: "If the injured person has not been engaged in the employment of the same employer for the full year immediately preceding the accident, the compensation shall be computed according to the annual earnings which persons of the same class in the same employment and same location (or if that be impracticable, of neighboring employ-

ments of the same kind) have earned during such period." Appellant then points out that where the injured employee has not worked for the employer a year preceding the accident, his compensation is computed from the average annual earnings of persons of the same class "in the same employment," citing Urseth v. Encyclopedia Britannica, 343 Mo. 1083, 124 S. W. (2d) 1101, 1103. See, also, Edwards v. Ethyl Gasoline Corp., 342 Mo. 98, 112 S. W. (2d) 555, 561. Appellant contends that in view of Sec. 3710(c) supra, the evidence of the annual earnings of employees of like and neighboring employers was incompetent and irrelevant when the annual earnings of persons of the same class in the employment of the same employer was available and was shown; that the annual earnings of employees of like and neighboring employers, who have worked for several employers and not for one employer is likewise incompetent and irrelevant; that the annual earnings of employees of like and neighboring employers for the preceding and other calendar years are also incompetent and irrelevant; and that no such evidence may be considered in determining plaintiff's "average annual earnings" under Sec. 3695(a) when construed with Sec. 3710(c).

Appellant argues that, subdivision (d) of Sec. 3710, supra (applicable "in employments in which it is the custom to operate throughout the working days of the year"), cannot be applied to it; and that, if subdivision (c) is not applicable, then only subdivision (e) (applicable "in employments in which it is the custom to operate for a part of the whole number of working days in each year") applies. We think that neither subdivision (d) nor subdivision (e) is applicable here because the evidence wholly fails to show that the "average annual earnings" of employees in such employment, as here, are "not otherwise determinable." Nor does the plaintiff's evidence show that it was the custom of the employment, such as the defendant's, to operate throughout the working days of the year.

Respondent agrees that subdivision (c) of Sec. 3710 applies and cites the following cases: Bietsch v. Midwest Piping & Supply Co. (Mo. App.), 86 S. W. (2d) 187; Lamker v. Schiller (Mo. App.), 136 S. W. (2d) 371; Werner v. Pioneer Cooperage Co. (Mo. App.), 155 S. W. (2d) 319; Kennedy v J. D. Carson Co. (Mo. App.), 149 S. W. (2d) 424; Hilse v. Cameron, Joyce Const. Co. (Mo. App.), 194 S. W. (2d) 760. These cases are further cited on the theory that they authorize a consideration of plaintiff's evidence concerning the annual earnings of ironworker foremen in like and neighboring employments in the City of St. Louis for a limited period of calendar years preceding plaintiff's injury. Respondent says that by the use of the words "in the same employment" the "legislature obviously did not intend to confine the proof to the annual earnings of persons in the employ of the same employer"; and that the evidence of "annual

earnings" of neighboring employments. of the same kind may be considered.

[485] In the present case plaintiff's evidence showed that it was the custom in the ironworker foremen's trade or profession for ironworker foremen to work at some kind of work throughout the working days of the year, if they wanted to do so; that, if one contractor did not have jobs, another did and, if the weather was inclement or outside work stopped, there were plenty of inside jobs available with other contractors; and that an ironworker foreman could work at his trade every day, if he so desired, at some place with some employer. Plaintiff offered no evidence tending to show that defendant used ironworker foremen in both inside and outside work throughout the year. Nor did plaintiff offer any evidence tending to show that it was the custom of any individual construction contractors to operate throughout the working day of the year, or that contractors engaged in the same business in which defendant was engaged so operated their businesses. Plaintiff's evidence, on the other hand, tended to show that it was not the custom of the individual employers of ironworker foremen to operate throughout the working days of the year; and that (to be continuously employed) it was necessary for ironworker foremen to shift from contractor to contractor, employer to employer and from one job to another, to find some contractor with inside work or other work, when the weather was bad, or when the work in which the employee was engaged stopped for any cause. Even plaintiff's witness Knoop, who had worked for one contractor for four years did not testify that his employer operated throughout the working days of the year. Defendant's evidence, however, expressly showed that it didn't use ironworker foremen unless it had contracts requiring the use of reinforcing steel in concrete work, and that it did not operate with ironworker foremen except when it had that kind of contracts.

Plaintiff offered no evidence tending to show that it was "impracticable" to prove the average annual earnings of persons of the same class as plaintiff in the employment of the same employer with plaintiff at the same location. In the absence of such proof evidence of earnings in neighboring employments of like kind should have been excluded. We construe the words "persons of the same class" in Sec. 3710 (c), as applied here in connection with Sec. 3695(a), to mean other ironworker foremen doing the same kind of work and drawing the same union scale of pay per hour. Grennan v. Emerson Electric Mfg. Co., 354 Mo. 781, 191 S. W. (2d) 646. We construe the words "persons . . . in the same employment and same location" to mean other persons of the same class in the employment of the same employer, towit, other ironworker foremen employed by the defendant in the City of St. Louis. Urseth v. Encyclopedia Britannica, supra; Edwards v. Ethyl Gasoline Corp., supra. Respond-

ent's construction of subdivision (c) to permit consideration of its ironworker foremen's testimony would not give effect to the words, "or if that be impracticable, of neighboring employments of the same kind." We do not construe any of the cases cited by respondent to support respondent's view.

In the case of Bietsch v. Midwest Piping & Supply Co., supra, apparently, in the absence of evidence of the annual earnings of persons of the same class "in the same employment" and same location, evidence of annual earnings of persons of the same class "in neighboring employments of the same kind" was held sufficient to support an award. Kennedy v. J. D. Carson Co., supra; Hilse v. Cameron, Joyce Const. Co., supra, are to the same effect.

The use of the words "average annual earnings" in Sec. 3695(a) necessarily excludes a consideration of any particular period of years, as for example, only the last five years, or only the preceding year. Sayles v. Kansas City Structural Steel Co., supra; Soars v. Soars-Lovelace, Inc., 346 Mo. 710, 142 S. W. (2d) 866, 869; Hilse v. Cameron, Joyce Const. Co., supra. The "average annual earnings" as used in Sec. 3695(a), when construed with Sec. 3710(c) to determine inclusion or exclusion, means that the average annual earnings of other persons of the same class employed by the same employer in the same location are to be determined as of the [486] date of the accident, that is the average annual earnings preceding that date. Such earnings may not be determined on a calendar years basis, but for the twelve months immediately preceding the accident, averaged with preceding years of employment in the same grade in the same employment to determine the "average annual earnings."

To base the exclusion of any employee from the benefits of the Workmen's Compensation Law upon what some one or more individuals of the same trade or class, receiving the same union rate per hour, might be able to earn in the course of a year by moving from one employer to another, working on outside or inside ironwork according to the weather and shifting from contractor to contractor, or from job to job, in order to work every work day for someone some place and earning the most money possible, is to base exclusion upon a variable and uncertain factor, dependent alone upon the energy or necessity of particular individuals. Such a basis is in nowise dependent upon the period of operation of employers of ironworker foremen generally, or upon what ironworker foremen earn in the regular employment of established employers. Such an uncertain and impractical standard is not provided for by the Workmen's Compensation Law and it cannot be used as the basis for determination of whether a particular individual, such as plaintiff, was or was not under the Workmen's Compensation Law.

Defendant's evidence tended to show, not only that it was practical to show the average annual earning of persons in the same

class as plaintiff and employed by the same employer at the same location, but showed such facts by the testimony of Panchot and Schrader, towit, that they were ironworker foremen of the same class as plaintiff, belonging to the same union and drawing the same union scale pay; that they were in the same employment, working for the same employer; that they chose to work for defendant and to wait until defendant had work; and that these two ironworker foremen, working for the same employer at the same hourly rate and in the same location, in concrete construction work in the City of St. Louis had "average annual earnings" of less than $3600.

In support of the contention that the average annual earnings of Schrader and Panchot did not constitute substantial evidence of the average annual earnings of persons of the same class in the same employment, respondent cites Werner v. Pioneer Cooperage Co., supra, and Hils v. Cameron, Joyce Const. Co., supra. These cases do not support that contention. There was no evidence that defendant operated any business using ironworker foremen when these employees were not working. No reason appears for not considering such evidence on the issue in question, but if the testimony of Panchot and Schrader be deemed insufficient, then Sec. 3695(a) would be construed with Sec. 3710(e) and the evidence presented would not show "average annual earnings" exceeding $3600.

As stated, it is conceded that the Missouri Workmen's Compensation Law applies unless the evidence shows that plaintiff's "average annual earnings," as determined under the provisions of the Workmen's Compensation Law, exceeded $3600 per year. The facts adduced upon which the applicability of the Workmen's Compensation Law depends are in effect conceded and there is no competent evidence in the record to sustain a finding that plaintiff's "average annual earnings," as determined under the provisions of the law, exceeded $3600 per year. The court should have directed a verdict for the defendant. Klasing v. Fred Schmitt Contracting Co., 335 Mo. 721, 73 S. W. (2d) 1011, 1016 (overruled on another issue); McKay v. Delico Meat Products Co., 351 Mo. 876, 174 S. W. (2d) 149, 157. We need not rule other assignments of error.

The judgment is reversed. *Bradley* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.