Donald L. **AVERY**, Respondent,

v.

**CITY OF COLUMBIA**, Appellant,

**Second Injury Fund**, Respondent.

No. WD 53939.

Missouri Court of Appeals,
Western District.

March 17, 1998.

Daniel K. Atwill, Susan Ford Robertson, Knight, Ford, Wright, Atwill, Parshall & Baker, Columbia, for appellant.

David B. Rogers, John W. Rogers, Columbia, for respondent.

Before HOWARD, P.J., and BRECKENRIDGE and HANNA, JJ.

BRECKENRIDGE, Judge.

The City of Columbia appeals from a decision of the Labor and Industrial Relations Commission awarding workers' compensation benefits in the form of total knee replacement surgery and future temporary total disability benefits to its employee, Donald Avery, for knee injuries he sustained while driving a bus for the City. The City contends that the Commission erred in its award because there was not sufficient competent evidence that Mr. Avery suffered a compensable injury or that a causal connection exists between that injury and knee treatments he might require in the future. Because Mr. Avery satisfied his burden of proving he sustained an injury as a result of an accident in the course of employment, the decision of the Commission is affirmed.

## Factual and Procedural Background

Mr. Avery was employed by the City of Columbia as a bus driver at the time of his injury November of 1992. As Mr. Avery was driving the bus through the intersection of Rollins and College in Columbia, the bus would not gain speed and started to slow down, forcing Mr. Avery to pull it onto the side of the street. Upon examining the bus, Mr. Avery discovered that the bus had lost fluid. He immediately called his supervisor, who sent a mechanic onto the scene to diagnose the problem. The mechanic checked the bus and indicated that the bus had lost all its transmission fluid and the transmission was not functioning.

The mechanic called the supervisor, who told him to push the bus back in with his truck while Mr. Avery guided it at the steering wheel. Mr. Avery objected to this plan, informing the mechanic that it was "unsafe" and "unethical" to push the bus "clear across the city of Columbia with a pickup truck." Mr. Avery contacted the supervisor himself and was told that this was normal city policy and that if he did not comply he would be written up for insubordination and could be fired. Mr. Avery determined that he had no choice and sat behind the steering wheel in the bus to guide it while the mechanic pushed it from behind with his pickup truck.

The bus and truck proceeded in this fashion for about a mile without incident. Near the intersection of Providence Road and the Business Loop, the truck accelerated to prod the bus over the crest of a hill. However, after the bus began heading downhill, the light at the fast-approaching intersection turned red. Mr. Avery was unable to stop the bus and ran the red light, causing a "chain reaction" wreck in which the bus collided with several cars and trucks. As a result of the crash, Mr. Avery's knees struck the dashboard and windshield and he fell out of his seat onto the floor, breaking his eyeglasses in the process. Mr. Avery immediately felt pain in his knees and was otherwise stiff and sore. He was taken to the emergency room for observation and released

shortly thereafter. Mr. Avery had two arthroscopic surgeries on his left knee prior to this accident but he had never before experienced trouble with his right knee. At the time of the accident, he had no problems with either of his knees as a result of his preexisting injuries.

The City originally referred Mr. Avery to Dr. Cooper, and then, approximately seven weeks later, to Dr. William Quinn, an orthopedic surgeon. Dr. Quinn diagnosed bilateral knee contusions with aggravation of the articular surfaces on both knees. Dr. Quinn performed arthroscopic surgery on Mr. Avery's left knee on February 10, 1993 and on his right knee on March 2, 1993. These surgeries did not alleviate Mr. Avery's pain. However, Dr. Quinn released him from his care on March 29, 1993. On October 7, 1993, Mr. Avery returned to Dr. Quinn, complaining of increased knee pain and "mild catching" in the knee. After diagnosing traumatic arthritis [1] in both of Mr. Avery's knees, Dr. Quinn prescribed physical therapy and a weight reduction program, since he considered Mr. Avery's weight problematic. Mr. Avery received physical therapy two or three times a week for six months but he still suffered significant pain and was unable to walk without a cane or walk any significant distance.

In December of 1993, while he was still receiving physical therapy, Mr. Avery went to see Dr. Paul Lux for a second opinion in accordance with Dr. Quinn's instructions and the recommendation of Helen Gray, the administrator of the workers' compensation office for the City. Dr. Lux advised Mr. Avery that he had lost the articular surfaces of his knees and that his difficulties could be remedied by bilateral knee replacement surgery. Dr. Lux advised Mr. Avery that neither his obesity nor his relatively young age of 48 years would operate as impediments to the surgery. However, Dr. Lux advised Mr. Avery to "wait as long as possible" before having the surgery and ordered him to make a return visit in six months.

1. In his deposition, Dr. Quinn explained that traumatic arthritis is a condition involving inflammation of a joint as a result of an injury.

Approximately seven months later, Mr. Avery presented himself to Dr. Quinn again. Although he had lost approximately thirty-five pounds during physical therapy, he was still extremely obese. Dr. Quinn informed Mr. Avery that he probably would benefit from knee replacement surgery but that he could not recommend it immediately because of two factors. First, Dr. Quinn believed that Mr. Avery, being 48 years old, was too young for the surgery because total knee replacements have a life expectancy and with each replacement the bone stock it sits on is lessened and subsequent replacements are harder and harder until eventually they are unsuccessful. Second, Dr. Quinn believed Mr. Avery would benefit from further weight loss not only to improve the life expectancy of the replacement knees but to increase his chances of successfully going through surgery and recuperation since obesity frequently impedes anesthetic procedures and recovery. Almost two years later, Mr. Avery returned to see Dr. Lux, who at that time advised Mr. Avery to have the bilateral knee replacement surgery immediately. Subsequently, Mr. Avery filed a claim for workers' compensation benefits.

At the hearing before an administrative law judge of the Division of Workers' Compensation on Mr. Avery's claim, the parties stipulated that the Division had jurisdiction over the case and that the provisions of the workers' compensation law apply. The evidence presented at the hearing included Mr. Avery's testimony as well as the deposition testimony of both Dr. Lux and Dr. Quinn. In his deposition testimony, Dr. Lux testified that, although Mr. Avery had a preexisting arthritic condition in his knees, he had severe arthritis in both of his knees as a result of the bus accident. Dr. Lux stated to a reasonable degree of medical certainty that the accident was the most significant contributing factor to the need for total knee replacement surgery. Dr. Lux recommended total knee replacements for Mr. Avery immediately. Dr. Quinn, on the other hand, testified that he did not recommend the surgery for Mr. Avery immediately, because Mr. Avery needed to lose weight, but he believed that Mr. Avery would require the surgery in the future. Both doctors testified that the acci-

dent aggravated Mr. Avery's preexisting arthritic condition and hastened the time when he would need the total knee replacements. Dr. Quinn testified that had the accident not occurred, Mr. Avery would have needed total knee replacement surgery when he was in his 60's.

The administrative law judge found in favor of Mr. Avery and ordered the City to provide him with bilateral total knee replacement surgery plus all related medical care. In addition, the administrative law judge ordered the City to pay for any future temporary total disability benefits necessitated by the surgery and treatment. In his findings, the administrative law judge found that both doctors' depositions were very similar. They both agreed that Mr. Avery suffered from an arthritic condition which was aggravated by the accident and that he needed total knee replacement but Dr. Quinn felt this was necessary at some indefinite point in the future while Dr. Lux testified it was necessary immediately. The administrative law judge found Dr. Lux's testimony more persuasive and determined that bilateral total knee replacements were reasonably required to cure and relieve Mr. Avery from the effects of the injuries he sustained in the bus accident.

Therefore, the administrative law judge ordered the City to pay for the surgery and for any future temporary total disability benefits resulting from the surgery. The administrative law judge indicated that the award was temporary or partial and nature and subject to further order. Furthermore, he kept it open until a final award could be made. The City appealed this decision to the Labor and Industrial Relations Commission. The Commission adopted the ALJ's decision granting Mr. Avery benefits. This appeal ensued.

## Standard of Review

■ The issue is whether the Commission erred in finding that Mr. Avery was entitled to compensation for knee replacement surgery as a result of the bus accident. In deciding an appeal of a workers' compensation claim, this court engages in a two-step review process:

In the first step, the court examines the whole record, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award, to determine if the record contains sufficient competent and substantial evidence to support the award. If not, the Commission's award must be reversed. If there is competent and substantial evidence supporting the award, the court moves to the second step, where it views the evidence in the light most favorable to the award, but must consider all evidence in the record, including that which opposes or is unfavorable to the award, take account of the overall effect of all of the evidence, and determine whether the award is against the overwhelming weight of the evidence. *Davis v. Research Medical Center*, 903 S.W.2d 557, 571 (Mo.App.1995).

In reviewing the Commission's award, the appellate court cannot substitute its judgment regarding questions of fact for that of the Commission. *Id.* Because, in this case, the Commission adopted the administrative law judge's findings and award, the "resulting consistency, especially as concerns credibility determinations, is a powerful factor in favor of upholding the Commission's award on appeal." *Id.* "Decisions concerning the weight to be given expert opinions lie within the Commission's sole discretion and cannot be reviewed by this court." *Miller v. Wefelmeyer*, 890 S.W.2d 372, 375–76 (Mo. App.1994).

The Workers' Compensation Law should be interpreted in a liberal manner in favor of the employee. *Minnick v. South Metro Fire Prot. Dist.*, 926 S.W.2d 906, 909 (Mo.App.1996). Questions regarding the right of the employee to benefits must be resolved in the injured employee's favor. *Id.* However, the claimant in a workers' compensation proceeding has the burden of proving all elements of the claim to a reasonable probability. *White v. Henderson Implement Co.*, 879 S.W.2d 575, 577 (Mo.App.1994). Therefore, the burden was on Mr. Avery to prove that he was entitled to workers' com-

pensation benefits for the injury he suffered while driving the city bus.

### Appellate Jurisdiction

Before proceeding to the City's point on appeal, this court determines whether it has jurisdiction to hear this appeal. In this case, the Commission entered a temporary or partial award of benefits to Mr. Avery. Generally, no appeal lies from a temporary or partial order such as the one in this case. *Leslie v. School Services and Leasing*, 947 S.W.2d 97, 99 (Mo.App.1997). However, where the question in the case involves a determination of liability, this court may review the award even though it was temporary or partial in nature. *Id.* Because the Commission resolved the issue of liability in favor of Mr. Avery, this court has appellate jurisdiction. *Id.*

### Sufficiency of Evidence to Support the Commission's Award

In its only point on appeal, the City contends that Mr. Avery failed to sustain his burden of proving the elements of his workers' compensation claim because there was insufficient evidence that Mr. Avery's injury while driving the bus was causally connected with his need to have bilateral knee replacement surgery in the future. Essentially, the City argues that even had the accident not occurred, Mr. Avery would have required the bilateral knee replacement because of prior work-related injuries and degenerative arthritis. Therefore, the City contends, it should not be held liable since the bus accident was not the proximate cause of Mr. Avery's problems.

Section 287.020, RSMo 1986 is the statutory provision relevant to Mr. Avery's claim.[2] The portions of § 287.020, RSMo 1986 relevant to this appeal are as follows:

\* \* \*

2. The word **"accident"** as used in this chapter shall, unless a different meaning is

---

2. The legislature amended § 287.020, RSMo 1986 in 1993, but that amendment is not applicable to this case because Mr. Avery's accident

occurred in 1992. *See Quilty v. Frank's Food Mart*, 890 S.W.2d 360, 362 n. 1 (Mo.App.1994).

clearly indicated by the context, be construed to mean an unexpected or unforeseen event happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury.

3. The terms **"injury"** and **"personal injuries"** shall mean violence to the physical structure of the body and to the personal property which is used to make up the physical structure of the body, such as artificial dentures, artificial limbs, glass eyes, eyeglasses, and other prostheses which are placed in or on the body to replace the physical structure and such disease or infection as naturally results therefrom. These terms shall in no case except as specifically provided in this chapter be construed to include occupational disease in any form, nor shall they be construed to include any contagious or infectious disease contracted during the course of the employment, nor shall they include death due to natural causes occurring while the worker is at work.

\* \* \*

Sections 287.020.2 & 287.020.3, RSMo 1986. When construing a statute, this court must give the language its plain and ordinary meaning to ascertain the intent of the legislature. *Cook v. St. Mary's Hosp.*, 939 S.W.2d 934, 938 (Mo.App.1997). Any doubts concerning the employee's right to compensation under the statutes must be resolved in favor of the injured employee. *Id.* Here, Mr. Avery "has the burden of proving not only that an accident occurred and that it resulted in injury, but also that a disability resulted, and the extent of the disability." *Meyer v. Superior Insulating Tape*, 882 S.W.2d 735, 740 (Mo.App.1994).

▪ Mr. Avery satisfied his burden of producing sufficient evidence that he suffered an "accident" within the meaning of § 287.020.2, RSMo 1986. "Accident" is to be accorded a liberal interpretation under § 287.020.2, RSMo 1986. *Wolfgeher v. Wagner Cartage Service, Inc.*, 646 S.W.2d 781, 785 (Mo. banc 1983). Mr. Avery testified that he fell out of the bus seat and onto the floor when the bus he was steering collided with other vehicles at an intersection. Clearly, this was an unexpected or unforeseen event which happened *suddenly or violently. The event also* produced objective symptoms of an injury in that Mr. Avery was injured when he fell to the floor and his glasses broke. Therefore, Mr. Avery satisfied the first part of his burden.

▪ Mr. Avery also was required to prove that he sustained an "injury" as a result of the accident that occurred while he was guiding the bus. Here, too, Mr. Avery satisfied his burden of producing evidence that he suffered from an "injury" as a result of the accident. Both Drs. Quinn and Lux testified that Mr. Avery was injured as a result of the bus accident. Mr. Avery himself testified that he felt immediate pain in his knees when he fell from the driver's seat in the bus. He also presented medical evidence that this accident aggravated his preexisting knee condition and necessitated total knee replacement surgery sooner than he otherwise would have required it.

The City argues that Mr. Avery failed to satisfy his burden of proving that the accident caused his injury under § 287.020.3(2)(a), RSMo 1994, which requires the employment to be a substantial factor in causing the injury. The City argues that the bus accident was not a substantial factor in causing the injury because Mr. Avery had a preexisting arthritic condition and he would have needed total knee replacement whether the bus accident happened or not. The City argues that the bus accident was merely a triggering or precipitating factor of Mr. Avery's injury and, as a result, it was not a substantial factor as required by § 287.020.3(2)(a), RSMo 1994. However, the City's reliance on the provisions of the amended statute is misplaced. The substantial factor requirement of § 287.020.3 was not in effect at the time of Mr. Avery's accident. *See Quilty*, 890 S.W.2d at 362 n. 1.

▪ Under § 287.020, RSMo 1986, the law in effect at the time of the bus accident, an injury is compensable "[w]here the performance of the usual and customary duties of an employee leads to physical breakdown or a change in pathology...."

*Rector v. City of Springfield*, 820 S.W.2d 639, 642 (Mo.App.1991) (quoting *Wolfgeher*, 646 S.W.2d at 784). The focus of the inquiry is on whether an injury occurred, not on what "act or force immediately preceded the injury." *Rector*, 820 S.W.2d at 642. The work of the employee does not have to be the sole or even the primary cause of the injury; it must only be a contributing factor to the injury. *Id.* "[T]he right to compensation should exist if the actual triggering causes are found, on the basis of substantial evidence, to meet the 'job related' or 'work related' test of *Wolfgeher*." *Id.* (quoting *Wynn v. Navajo Freight Lines, Inc.*, 654 S.W.2d 87, 89–90 (Mo. banc 1983)).

 Under this standard, "a preexisting but non-disabling condition does not bar recovery of compensation if a job-related injury causes the condition to escalate to the level of disability." *Miller*, 890 S.W.2d at 376. "If substantial evidence exists from which the Commission could determine that the claimant's preexisting condition did not constitute an impediment to performance of claimant's duties, there is sufficient competent evidence to warrant a finding that the claimant's condition was aggravated by a work-related injury." *Id.*

 Here, there was substantial evidence that Mr. Avery's work for the City was a contributing factor to his injury. The performance of Mr. Avery's usual and customary duties as a city bus driver led to his injuries in this case. Mr. Avery felt immediate pain when he was thrown to the floor of the bus when it collided with other vehicles. This certainly constitutes substantial evidence that the performance of Mr. Avery's job was a contributing factor to and a triggering cause of his subsequent knee problems. Most importantly, however, Dr. Lux stated to a reasonable medical certainty that the accident was the primary cause of Mr. Avery's knee problems:

Well, given the fact that he was pain free and working, functioning well from what he tells me, prior to this accident and, since that time, has developed severe pain in both his knees, I'd have to conclude that the trauma of the accident was the most

significant contributing factor to him needing the knee replacement.

This expert testimony constitutes substantial evidence that Mr. Avery's employment with the City aggravated his preexisting arthritic condition. *See Lawton v. Trans World Airlines, Inc.*, 885 S.W.2d 768, 771 (Mo.App. 1994). As such, his injury is compensable as a work related injury. *Anderson v. Noel T. Adams Ambulance Dist.*, 931 S.W.2d 850, 854 (Mo.App.1996). Therefore, there was substantial evidence to support the finding that Mr. Avery's condition was aggravated by a work-related injury.

In addition, Mr. Avery testified that before the bus accident he was having no problem with his knees:

Q. Had you ever had any injury to your right knee prior to this accident?

A. No.

Q. How were you getting along immediately prior to the accident as far as your knees were concerned?

A. You are talking about then?

Q. Prior to the bus accident?

A. Prior to the bus accident, there was no problem.

Q. Were you walking okay?

A. Yes.

Q. Were you using a cane?

A. No.

Q. As far as your activities around home, were you able to use a stepladder, for instance?

A. Yes.

Q. Were you able to mow the yard?

A. Yes.

Q. And this was all after the [prior work-related] accident?

A. Yes.

Q. But before the accident that you had with the City?

A. Before the accident with the City, I had no problems.

 Mr. Avery's testimony also supports a finding that the bus accident caused or aggravated his injury. *Weinbauer v. Grey Eagle Distributors*, 661 S.W.2d 652, 654 (Mo. App.1983) (worker's testimony that he felt

"wonderful" prior to accident despite preexisting condition sufficient to show aggravation of that condition). The "[t]estimony of the claimant or other lay witnesses as to facts within the realm of lay understanding can constitute substantial evidence of the nature, cause, and extent of the disability, especially when taken in connection with, or where supported by, some medical evidence." *Eimer v. Bd. of Police Com'rs of Kan. City,* 895 S.W.2d 117, 120 (Mo.App.1995) (quoting *Strate v. Al Baker's Restaurant,* 864 S.W.2d 417, 420 (Mo.App.1993)). Here, Dr. Lux testified that the accident aggravated Mr. Avery's preexisting condition. In addition, Mr. Avery testified that he was feeling fine and having no trouble with his knees when the accident occurred. Therefore, there was substantial evidence that Mr. Avery was injured within the meaning of § 287.020, RSMo 1986.

As a result, there was substantial evidence to support the award of workers' compensation benefits to Mr. Avery. Mr. Avery satisfied his burden of proving he suffered an accident that caused an injury so as to be entitled to the benefits.

■ Having found that there is competent and substantial evidence to support the award, the second step in the review is to consider all the evidence in the record, including that which is unfavorable to the award, to determine whether the award is against the overwhelming weight of the evidence. *Davis,* 903 S.W.2d at 557. In this court's resolution of the first prong of the *Davis* test, we found that there was substantial evidence to support the Commission's award. Here, when we consider all the evidence in the record, we find there is no overwhelming evidence which would compel a contrary result. The Commission was entitled to believe Dr. Lux's testimony that the accident was "the most significant contributing factor" necessitating the total knee replacement as well as Mr. Avery's testimony that his knees were fine until the bus accident. *Davis,* 903 S.W.2d at 571. This court will not disturb the Commission's findings on appeal.

Because the Commission's award was supported by substantial and competent evidence, and was not against the overwhelming weight of the evidence, its decision granting Mr. Avery workers' compensation benefits is affirmed.

All concur.