Robert KERNS, Respondent,

v.

**MIDWEST CONVEYOR,**
Employer/Appellant,

and

Home Insurance Co., Insurer/Appellant,

**Missouri State Treasurer, Custodian of the Second Injury Fund, Respondent.**

No. WD 62045.

Missouri Court of Appeals, Western District.

Feb. 10, 2004.

Michael A. Knepper, Kansas City, MO, for Respondent Kerns.

D'Ambra M. Howard and James L. MowBray, Kansas City, MO, for Appellants.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, MO, Kimberley R. Fournier, Assistant Attorney General, Kansas City, MO, for Respondent Second Injury Fund.

Before BRECKENRIDGE, P.J., and EDWIN H. SMITH and HOWARD, JJ.

EDWIN H. SMITH, Judge.

Midwest Conveyer appeals from the decision of the Labor and Industrial Relations Commission (Commission) awarding the respondent, Robert Kerns, workers' compensation benefits for permanent and total disability, pursuant to § 287.120.[1] In awarding the respondent benefits, the Commission found that he was permanently and totally disabled as a result of an accident on June 26, 1995 (the accident), while in the course and scope of his employment with the appellant, in which he fell from a platform at the Ford Assembly Plant in Claycomo, Missouri.

The appellant raises three points on appeal. In Point I, it claims that the Commission erred in finding that the respondent was permanently and totally disabled as a result of the accident because there was not substantial and competent evidence from which to find, as required, that the respondent's alleged disabling injuries were caused by the accident. In Point II, it claims that the Commission erred in finding that the respondent was permanently and totally disabled because there was not substantial and competent evidence from which to find, as required, that the respondent was not able to return to employment, and, even if there was such evidence, the Commission's finding was nonetheless against the weight of the evidence. In Point III, it claims that the Commission erred in finding that it was liable for the entirety of the respondent's

found disability because, pursuant to § 287.220.1, it was only liable for the disability resulting from the last injury caused by the accident.

We affirm.

## Facts

The respondent began working as an ironworker in the early 1970's, regularly working as such until the accident. During that time, he suffered numerous work- and non-work-related injuries. While on the job, the respondent fell through a skylight, knocking his front teeth out and splitting his lip. In a separate incident at work, he broke his nose. He also fractured his left knee in a car accident that was not work related. And, prior to the accident, he was diagnosed with arthritis in his left leg, a degenerative condition affecting his left knee, and carpal tunnel syndrome in both hands.

On June 26, 1995, the respondent, while working as a structural steel ironworker for the appellant at the Ford Motor Plant in Claycomo, Missouri, fell backwards from a platform, located approximately eight feet from the floor, and was knocked unconscious. He was taken by ambulance to Liberty Memorial Hospital, where he remained until July 4, 1995. The respondent was diagnosed as having a closed head injury, scalp hematoma, right pulmonary contusion, right rib fracture, thoracic strain, lumbosacral strain, pelvic contusion, and elbow laceration.

Following the accident, the respondent timely filed a workers' compensation claim seeking benefits for injuries. At the time, the extent of his injuries had not yet been determined such that it was unclear what benefits were being sought. An amended claim was subsequently filed, in which the respondent sought benefits for permanent

1. All statutory references are to RSMo, 2000, unless otherwise indicated.

and total disability. The appellant, as well as the State Treasurer (pursuant to § 287.220.2), were named as parties in the amended claim.

On September 20, 2001, the respondent's claim for benefits was heard by an administrative law judge (ALJ). The parties stipulated that the respondent was involved in an accident arising out of and in the course of his employment, leaving the contested issues of the extent and nature of his disability and SIF liability, if any, for determination by the ALJ. Both the respondent and appellant presented evidence; however, only the respondent presented live testimony. The respondent, along with his wife and son, testified at the hearing. Mary Titterington, a vocational rehabilitation consultant, also testified. In addition, the respondent introduced deposition testimony from Drs. Nora Clark, P. Brent Koprivica, Nicola Y. Katf, and Eric G. Sollars, along with a significant amount of documentary evidence. The appellant offered the deposition testimony of Drs. Stanton L. Rosenberg and Terrence Pratt, along with other documentary evidence. The SIF did not present any evidence.

The respondent testified that since the accident, he had suffered from severe pain in his back and hips and had significant difficulty remembering things and that as a result, he had become depressed. He also testified that these conditions were nonexistent before the accident. In addition, he testified that his previous injuries and conditions had not prohibited him from performing his duties as an ironworker. The respondent's wife and son testified to changes they had seen in the respondent's condition since the accident and to specific examples of forgetfulness and physical limitation they had witnessed.

Titterington testified that on June 3, 1998, she evaluated the respondent to determine his employability. As part of her evaluation, she employed the Slosson Intelligence Test–Revised, Wide Range Achievement Test–Revision 3, Minnesota Rate of Manipulation Tests, Adult Basic Learning Examination, and the Box and Blocks Test. Based on the test results, she found that the respondent academically functioned at a fourth-grade level and that as a result he was unable to perform even the most basic of unskilled sedentary work and, therefore, was unemployable.

In her deposition, Dr. Clark, a licensed clinical psychologist, testified concerning her neuropsychological evaluation of the respondent on August 28, 1996, and September 11, 1996, the purpose of which was to assess the respondent's intellectual and cognitive capacities. As part of her evaluation, she administered the Wechsler Adult Intelligence Test, the Halstead Reitan Neuropsychological Test Battery for Adults, the Reitan Indiana Aphasia Screening Test, as well as a series of sensory, perceptual, and motor tests. Based on her evaluation, Dr. Clark concluded that the respondent had low average intellectual abilities, poor academic skills, and a mild level of impairment in brain-related functioning.

Dr. Koprivica, an occupational medicine physician, testified in his deposition that he evaluated the respondent on January 22, 1998, at the request of the respondent to determine the level of disability, if any, suffered by the respondent, and the nature and extent of any injuries sustained by him in the accident. Based on his evaluation, Dr. Koprivica found that the respondent suffered from pre-existent industrial disability caused by carpal tunnel syndrome and had a history of medical and lateral tibial plateau fractures along with medical meniscus tears. He also found, however, that the respondent, as a direct result of the accident, sustained multiple traumatic injuries, including a closed head

injury resulting in vestibular dysfunction, tinnitus, and mild brain dysfunction, and aggravation to the respondent's pre-existent, but asymptomatic, spinal stenosis, degenerative hip disease, and lumbar spondylosis. He also diagnosed the respondent as having chronic pain syndrome, which caused him to suffer from sleep disturbance. Ultimately, Dr. Koprivica's medical opinion was that the respondent was permanently and totally disabled due to the combined effect of the injuries suffered in the accident and his pre-existing disabilities.

In his deposition, Dr. Katf, a psychiatric physician, testified that he conducted an evaluation of the respondent on June 16, 1998, at the request of the respondent. Based on his evaluation, Dr. Katf found that the accident caused the respondent to suffer from fairly serious depression, as well as memory loss. He also found that the respondent did not suffer from any sort of psychiatric condition before the accident. Ultimately, Dr. Katf's medical opinion was that the respondent is permanently and totally disabled as a result of the accident.

Dr. Sollars, the respondent's family physician since 1993, testified in his deposition that he had treated the respondent since the accident. Based on his treatment, Dr. Sollars found that the respondent had suffered an intra-cranial cerebral contusion as a result of the June 26, 1995, accident, and that as a direct result of this significant head injury, he suffered from memory, speech, and balance problems. He also found that the respondent suffered from back, hip, and neck pain, causing him to be depressed. Dr. Sollars' medical opinion was that the respondent was permanently and totally disabled as a result of the accident.

In response to the respondent's claim of permanent and total disability, the appellant offered the deposition of Dr. Rosenberg, a psychiatric physician. In his deposition, Dr. Rosenberg testified that he evaluated the respondent on March 17, 2000, at the request of the appellant. In his evaluation, Dr. Rosenberg interviewed the respondent and reviewed the respondent's medical and psychiatric records, as well as the reports from Dr. Clark and Dr. Katf. Dr. Rosenberg diagnosed the respondent as having an emotional disorder that caused him to exaggerate his symptoms. He further found that the respondent suffered from a perceived, rather than an actual, inability to function. Ultimately, Dr. Rosenberg's medical opinion was that the respondent suffered from depression, but that his depression was not caused by the accident and that it did not result in permanent and total disability.

The appellant also offered the deposition of Dr. Pratt, a physician specializing in physical medicine and rehabilitation, in support of its position. In his evaluation, Dr. Pratt met with the respondent on nine separate occasions from August 16, 1995, to March 1, 1996. He concluded that the respondent had a 33% permanent and partial disability to the body as a whole, with 10% attributable to pre-existing conditions including spinal stenosis and degenerative disease, resulting in a 23% permanent and partial disability as a result of the accident.

Based on the evidence presented, the ALJ found that the respondent sustained a 25% whole body permanent partial disability as a result of the accident. The ALJ also found that the respondent suffered from pre-existing disabilities, specifically a 20% permanent partial disability of his right upper extremity, 15% permanent partial disability of his left upper extremity, and 15% permanent partial disability of his lower extremity, assessing the SIF significant liability.

On December 10, 2001, the respondent filed an application for review with the Commission. The Commission found that the respondent was permanently and totally disabled as a result of the accident, and awarded him benefits accordingly.

This appeal followed.

## Standard of Review

■ Our standard of review is set forth in *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222–23 (Mo. banc 2003):

The Missouri constitution, article V, section 18 provides for judicial review of the commission's award to determine whether the award is 'supported by competent and substantial evidence upon the whole record.'

Section 287.495.1 of the Missouri statutes further indicates that a 'court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was produced by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.'

The constitutional standard ('supported by competent and substantial evidence upon the whole record') is in harmony with the statutory standard ('sufficient competent evidence in the record'). A court must examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award, i.e., whether the award is contrary to the overwhelming weight of the evidence. Whether the award is supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record. An award that is contrary to the overwhelming weight of the evidence is, in context, not supported by competent and substantial evidence.

Thus, in reviewing an award of workers' compensation benefits, we must examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award. Bearing in mind that, in the context of workers' compensation, if the award is contrary to the overwhelming weight of the evidence contained in the record, it cannot be considered to be supported by sufficient competent and substantial evidence. *Id.*

## I.

In Point I, the appellant challenges the sufficiency of the evidence to establish the requisite causal connection between the accident and the respondent's alleged injuries resulting in his disability. In Point II, it challenges the sufficiency of the evidence to establish the respondent's alleged disability. Inasmuch as the issue of the causal connection between the respondent's alleged injuries and the accident is not presented, unless there is sufficient evidence to establish that the respondent suffered disabling injuries, we logically address Point II first.

■ In Point II, the appellant claims that the Commission erred in finding that the respondent was permanently and totally disabled because there was not substantial and competent evidence from which to find, as required, that the respondent was not able to return to employment, and, even if there were such evidence, the Commission's finding was against the weight of the evidence. Specifically, the appellant claims that the Commission erred because:

the expert opinions of the doctors relied on by the LIRC have no objective factual basis, none of claimant's injuries are substantiated by objective tests, but only by claimant's own complaints, which testing demonstrates are exaggerated, the court misstated the facts, claimant's activities since the accident demonstrate he has recovered and the evidence demonstrates claimant suffers neither organic brain damage nor other mental or physical problems as a result of the accident.

Under Missouri's Workers' Compensation Law (WCL), §§ 287.010–.975, an employer is liable to furnish compensation to an employee for personal injury or death by accident arising out of and in the course of his employment. § 287.120.1. In that regard, the Commission found that the respondent, while working for the appellant at the Ford Motor Plant in Claycomo, was injured when he "slipped off the main lift" while attempting to come down from a platform that was approximately eight feet off of the ground, causing him to fall backwards onto his head and knocking him unconscious, and that for purposes of the WCL, this was an accident that arose out of and in the course of his employment with the appellant. The appellant does not dispute this finding on appeal. The appellant also does not dispute the Commission's finding that as a result of that fall, the respondent suffered "swelling to the back of his head, fractured ribs, a bruised right lung and a laceration on his right arm at the elbow." What the appellant does dispute in this point is the Commission's finding that the respondent is permanently and totally disabled for purposes of the WCL, first claiming that there was no evidence supporting such a finding, and then claiming that even if there was, the finding was against the weight of the evidence. We disagree.

Section 287.020.3(3) defines a compensable injury, under the WCL, as:

> violence to the physical structure of the body and to the personal property which is used to make up the physical structure of the body, such as artificial dentures, artificial limbs, glass eyes, eyeglasses, and other prostheses which are placed in or on the body to replace the physical structure and such disease or infection as naturally results therefrom.

A claimant is considered totally disabled, for purposes of the WCL, if he is unable to return to any employment, not merely the employment in which he was engaged at the time of the accident. § 287.020.7. The test for total disability is "whether any employer, in the usual course of business, would reasonably be expected to employ the employee in the employee's present physical condition." *Boyles v. USA Rebar Placement, Inc.*, 26 S.W.3d 418, 424 (Mo. App.2000). This standard or test "applies to all total disability claims—permanent and temporary." *Id.* A disability is considered "permanent" if it can be "shown to be of indefinite duration in recovery or substantial improvement is not expected." *Tiller v. 166 Auto Auction*, 941 S.W.2d 863, 865 (Mo.App.1997).

In concluding that the respondent was permanently and totally disabled and awarding him benefits accordingly, the Commission found that he was: "unable to compete in the open labor market because of his cognitive deficits, physical pain, resulting depression and lack of transferable skills." As to the respondent's "cognitive deficits," the Commission found that:

> the medical evidence conclusively shows that claimant suffers from memory loss, which would greatly affect his ability to work as an ironworker [his occupation of thirty years] again. Claimant has been shown to have increased deficits in complex problem solving skills. When

tested by Dr. Nora Griffin–Clark, a neuropsychologist, claimant was unable to remember measurements, angles and lengths. These are skills that are necessary to work as an ironworker.

In making this finding, the Commission relied on the expert medical testimony of Dr. P. Brent Koprivica and Dr. Nicola Y. Katf. In claiming that there is no evidence to support the Commission's finding that the respondent was permanently and totally disabled, the appellant contends that the testimony of Drs. Koprivica and Katf was unreliable and not worthy of consideration in that it was based not on objective test results but solely on the subjective complaints of the respondent, which tests indicated were "exaggerated." In other words, the appellant is not contending that there was not substantial evidence to support the Commission's finding that the respondent was permanently and totally disabled, but that the expert medical evidence relied upon by the Commission for its finding was incompetent in that it was not based upon objective testing.

The record indicates that in concluding that the respondent was suffering from cognitive deficits, physical pain, and resulting depression, Drs. Koprivica and Katf relied, in significant part, on his subjective complaints. The appellant contends that this was improper. In support of this contention, the appellant cites *Davies v. Carter Carburetor*, 429 S.W.2d 738, 751 (Mo.1968). *Davies* was a workers' compensation case, which involved, *inter alia*, the issue of whether a doctor's testimony as to his diagnosis was competent evidence inasmuch as it was based on the claimant's subjective complaints. *Id.* at 750. While *Davies* can be cited for the proposition that a physician's diagnosis may not be based upon statements made to physicians concerning the circumstances of a past injury, *id.* at 751, it *cannot* be cited for the proposition asserted by the appellant here.

In fact, it can be cited for the exact opposite. In that regard, the *Davies* court stated that the "prevailing rule" was that: "A physician, in stating his expert opinion on a patient's condition, may testify to what he personally observed and also to what the patient said (an exception to the hearsay rule) concerning his present, existing symptoms and complaints." *Id. See also Lawton v. Trans World Airlines, Inc.*, 885 S.W.2d 768, 771 (Mo.App.1994); *Avery v. City of Columbia*, 966 S.W.2d 315, 322 (Mo.App.1998).

■ For the reasons stated, the expert medical evidence relied upon by the Commission to find that the respondent was permanently and totally disabled was competent on that issue. Having so ruled, we now turn to the appellant's alternative claim in this point that the Commission's finding that the respondent was permanently and totally disabled was against the weight of the evidence.

■ An award of workers' compensation benefits "that is contrary to the overwhelming weight of the evidence is, in context, not supported by competent and substantial evidence." *Hampton*, 121 S.W.3d at 223. A decision is against the overwhelming weight of the evidence if we are left with a firm impression that it is wrong. *King v. City of Independence*, 64 S.W.3d 335, 338 (Mo.App.2002).

While the record indicates that there was evidence on both sides of the issue of whether the respondent was permanently and totally disabled, the Commission's finding, that he was, was not against the overwhelming weight of the evidence. In claiming that it was, the appellant primarily relies on the contrary expert medical evidence that it presented showing that the respondent suffers only from a perceived, rather than an actual, inability to function. However, our courts have con-

sistently held that the Commission, in cases of competing expert medical evidence, is free to pick and choose which expert to believe, *Bloss v. Plastic Enters.*, 32 S.W.3d 666, 671 (Mo.App.2000), and, thus, the Commission's finding was not against the overwhelming weight of the evidence because it sided with Drs. Koprivica and Katf over Drs. Rosenberg and Pratt.

As to the cognitive deficits, physical pain, and resulting depression, found by the Commission as rendering the respondent permanently and totally disabled, the respondent testified that he has difficulty remembering things, even routine things such as taking his medication and turning off the stove, has constant pain in his back and hips, and suffers from depression such that he has difficulty getting out of bed in the morning. In that regard, Dr. Koprivica found that the respondent suffers from vestibular dysfunction, tinnitus, and mild brain dysfunction. He further found that the respondent suffers from symptomatic spinal stenosis and degenerative hip disease, resulting in chronic pain. And, Dr. Katf found that the respondent suffers from a fairly serious depression and loss of memory, which, when considering all of the respondent's injuries, rendered him unable to work a full-time job in the competitive market. This evidence constituted substantial and competent evidence for the Commission to find that the respondent was suffering from cognitive deficits, physical pain, and resulting depression, which rendered him permanently and totally disabled.

Point denied.

## II.

■ In Point II, the appellant claims that the Commission erred in finding that the respondent was permanently and totally disabled as a result of the accident because there was not substantial and competent evidence from which to find, as required, that his alleged disabling injuries were caused by the accident. Specifically, it claims that the required causal link between the accident and the disabling injuries that the Commission found to have rendered the respondent permanently and totally disabled was not established by substantial and competent evidence in that the expert medical opinions relied upon by the Commission to find causation "were based on the opinion of another doctor who specifically did not find causation and on the subjective complaints of claimant, with no objective testing verifying claimant's complaints."

■ To be entitled to workers' compensation benefits, the claimant has the burden of proving not only that the accident arose out of and in the course of his employment but that the alleged injury or death was directly caused by the accident. *Landers v. Chrysler Corp.*, 963 S.W.2d 275, 279 (Mo.App.1997). In other words, a claimant must establish a causal connection between the accident and the compensable injury. *McDermott v. City of Northwoods Police Dep't*, 103 S.W.3d 134, 138 (Mo.App.2002).

The respondent testified that at the time of the accident, he was working full time, had recently remodeled his kitchen and bathroom, and was taking care of his lawn. He also testified that his degenerative back and hip conditions were completely asymptomatic before the accident. Dr. Koprivica found that the accident caused the respondent to suffer a closed head injury, which in turn caused his vestibular dysfunction, tinnitus, and mild brain dysfunction. He also found that the accident caused or substantially aggravated the respondent's degenerative back and hip problems, causing deterioration to proceed at a more rapid rate than would have

occurred otherwise. He further found that as a result of the accident, the respondent suffered from chronic pain syndrome that led to sleep deprivation and stress making it extremely difficult for the respondent to return to work. Dr. Katf found that the respondent's depression and memory loss resulted from the injuries sustained in the accident. Although Dr. Katf found the respondent's depression alone rose only to the level of a permanent and partial disability, he also found that, when considering all of the respondent's injuries, he had been rendered "unable to work a full time 40 hour a week job in the competitive market *as a result of his June [2]6, 1995 injury.*" Dr. Eric G. Sollars, the respondent's family physician, found that the respondent suffered multiple injuries in the accident, including several rib fractures, a severe concussion, and internal cerebral contusion. He also found that these injuries caused the respondent to suffer persistent memory problems and physical limitations resulting from back, neck, and hip pain. He further found that the respondent developed chronic depression due to the disability and pain caused by the accident. As a result, Dr. Sollars concluded that the respondent is "totally and permanently disabled *as a direct result of the fall in 1995.*"

The foregoing evidence constituted substantial and competent evidence establishing a causal link between the accident and the respondent's disabling injuries. The appellant, however, contends that the Commission could not rely on this evidence in that "the opinions were based on the opinion of another doctor who specifically did not find causation," specifically Dr. Nora Clark. As to that issue, the record does indicate that Drs. Koprivica and Katf, in finding as they did, relied, in part, on Dr. Clark's finding that the respondent suffered from an impairment in brain-related functioning. However, Dr. Clark's finding went to the issue of whether the respondent was permanently and totally disabled, not whether the accident caused him to be disabled. In any event, the fact that Dr. Clark made *no* determination as to the causation of the respondent's brain dysfunction would not render incompetent the other expert medical evidence establishing causation.

Although Dr. Sollars, in a letter to the respondent's attorney, Michael Knepper, dated August 12, 1997, stated that he agreed with Dr. Clark that "it was the fall and the closed head trauma that certainly has affected his memory and his particular state of depression," which indicates he misinterpreted Dr. Clark's findings as establishing causation, the record demonstrates that in finding causation, Dr. Sollars did not rely on a causation finding by Dr. Clark. This is so in that the record indicates that Dr. Sollars had expressed an opinion of causation long before Dr. Clark even began testing on the respondent. In that regard, in a separate letter to Eric Ryan of Disability Determinations, concerning the respondent's prognosis, dated April 29, 1996, approximately four months *before* Dr. Clark's first meeting with the respondent, Dr. Sollars expressed his opinion that the respondent had been suffering persistent memory problems and physical limitations since the accident, and that as a result the respondent "is totally disabled due to the injuries suffered on June 26, 1995."

As to the appellant's claim that the causation evidence relied on by the Commission in its finding was incompetent because it was based, in significant part, on the subjective complaints of the respondent, it is essentially the same contention that it made in Point II, *supra,* except as to the respondent's disability rating, rather than the issue of causation. Regardless, the same rationale that applied in deciding

Point II against the appellant applies in this point. The doctors in question, in making their causation determinations, as in determining disability, were free to rely on the subjective complaints of the respondent. *Avery,* 966 S.W.2d at 322; *Lawton,* 885 S.W.2d at 771.

Point denied.

### III.

In Point III, the appellant claims that the Commission erred in finding that it was liable for the entirety of the respondent's disability because, pursuant to § 287.220.1, it was only liable for the disability resulting from the last injury caused by the accident. Specifically, it claims that the Commission erred in finding that it was liable for the entirety of the respondent's disability "in that the facts demonstrate [respondent] suffered from numerous debilitating injuries and ailments prior to the accident here." This claim is moot, however, given the outcome of Points I and II.

The Supreme Court recently explained that:

> In deciding whether the fund has any liability, the first determination is the degree of disability from the last injury considered alone. Accordingly, pre-existing disabilities are irrelevant until the employer's liability for the last injury is determined. If the last injury in and of itself rendered [the claimant] permanently and totally disabled, then the fund has no liability and [the employer] is responsible for the entire amount of compensation.

*Landman v. Ice Cream Specialties, Inc.,* 107 S.W.3d 240, 248 (Mo. banc 2003) (citations omitted). Thus, inasmuch as we have already determined that the Commission did not err in finding that the respondent is permanently and totally disabled as a result of injuries sustained in the acci-

dent, any pre-existing disabilities that the respondent may have suffered from are irrelevant.

Point denied.

### Conclusion

The decision of the Commission awarding the respondent workers' compensation benefits for permanent and total disability, pursuant to § 287.120, is affirmed.

BRECKENRIDGE, P.J., and HOWARD, J., concur.