Carol CARNAL, Respondent,

v.

PRIDE CLEANERS and American
International Group,
Appellants.

No. WD 63411.

Missouri Court of Appeals,
Western District.

July 13, 2004.

Douglas Greenwald, Kansas City, KS, for appellants.

Frederick Bryant, Kansas City, for respondent.

RONALD R. HOLLIGER, Judge.

Pride Cleaners and American International Group appeal the Industrial and Labor Relations Commission's final award in favor of Carol Carnal upon her workers' compensation claim. That claim alleged that she had suffered a compensable mental injury due to work-related stress. Pride contends that the award was not supported by substantial evidence. We disagree, and affirm the Commission's award.

## FACTUAL AND PROCEDURAL BACKGROUND

Pride Cleaners is the brand name under which DCI Management Group offers dry cleaning and laundry services in the Kansas City metropolitan area. Carol Carnal had been employed in the dry cleaning industry since the age of 16. She first worked for her father, who owned Royal Cleaners. In 1990, Royal Cleaners was sold to Pride Cleaners. Carnal continued to work for Pride cleaners, becoming the manager of Pride's Grandview production facility[1] in 1997. She continued to hold that position until 2000.

Sometime in 1998 or 1999, Pride underwent a national reorganization. Prior to that point, many of Pride's retail locations conducted laundry and dry cleaning operations on-site. In the reorganization, however, nearly all of those functions were transferred to the production facilities. This caused a significant increase in the workload processed by each of the production facilities. The number of stores served by the Grandview facility doubled, due to the reorganization.

The manager of each production facility was responsible for supervising the production facility, ensuring that items to be cleaned were collected from the retail locations, dry cleaned and laundered to the customer's specifications, and then returned to the retail location for customer pick-up. Along with those responsibilities, the manager was also obligated to ensure that preventative maintenance was conducted on cleaning equipment and vehicles assigned to the facility. The manager also had various accounting and record-keeping responsibilities that had to be performed on a regular basis.

Due to the increased workload following the company reorganization, the Grandview facility began to experience an increased rate of equipment breakdown and

---

1. Each of Pride's production facilities performed dry cleaning and laundry work for many of Pride's storefront locations. The company had three other production facilities in the Kansas City area: the Central Laundry facility in Kansas City, Missouri; the Broadmoor facility in Mission, Kansas; and the Stanley, Kansas facility. The Broadmoor and Grandview facilities were the most similar in terms of volume and number of employees.

employee turnover. The latter was exacerbated by the company-wide elimination of attendance bonuses. Turnover was also elevated by the condition of the Grandview facility, which was housed in an older, dilapidated building with poor ventilation.

In order to fulfill guarantees to Pride's customers, the production facilities were required to return customers' items on a tight schedule. When there were insufficient workers to perform the work in a timely manner, the facility manager was expected to help out to ensure that items were processed and returned to the retail locations in a prompt manner.

Following the reorganization, Carnal's supervisor was her ex-husband, Dennis Dye. While Carnal made efforts to keep their working relationship cordial, Dye treated Carnal in an indifferent, demanding, and uncaring manner. Testimony from other witnesses, including other production facility managers, described their working relationship as having a great deal of animosity. Dye would curse at Carnal, using language with her that he would not employ with other staff. His treatment of her was significantly different than his treatment of the rest of the managerial staff, who were treated in a more appropriate manner.

On June 8, 2000, Carnal was summoned, with little notice, to a management meeting at one of Pride's other facilities. The Grandview facility was behind on the day's work, so Carnal advised Dye that she would be unable to attend. He called her again fifteen minutes later, advising her that she was holding up the meeting with her absence. So, Carnal left the production facility and began driving to the meeting. En route, she suffered a panic attack, experiencing shortness of breath, dizziness, and numbness in her arms. She stopped at a nearby convenience store, until she was able to calm down enough to call her husband, who took her to the emergency room at St. Joseph Hospital, where she was examined, given I.V. fluids, and later released. Carnal sought follow-up care with her family care physician who referred her to counseling. She did not return to her employment with Pride.

Carnal subsequently brought the present claim for workers' compensation benefits, contending that her panic attack was brought on by job-related stress. The Administrative Law Judge entered an award in favor of Carnal, concluding that she was entitled to total temporary disability benefits for a period of 21 3/7 weeks and permanent partial disability benefits based upon a finding of eight percent whole body impairment. In support of that finding, the ALJ found that Carnal had "suffered extraordinary and unusual stress during the course and scope of employment as a plant manager." While acknowledging that many of the stressors placed on Carnal following the reorganization were shared by those holding similar managerial positions at other production facilities, the ALJ held that Carnal was subject to unusually higher stress levels due to the added factors of the substandard working conditions and being supervised by her ex-husband. The Industrial and Labor Relations Commission, on review, affirmed the decision of the Administrative Law Judge. The present appeal follows.

## DISCUSSION

■ Appellants' sole point on appeal contends that the Labor and Industrial Relations Commission erred in finding that Carnal had suffered a compensable mental injury arising from work-related stress, insofar as there was insufficient evidence that her job-related stress was "extraordinary and unusual," as compared to similarly situated employees. Carnal responds, arguing that the Commission's award was

supported by substantial, competent evidence.

Where the Commission affirms the findings of the Administrative Law Judge, we review the decision of the ALJ as adopted by the Commission. *See Tangblade v. Lear Corp.*, 58 S.W.3d 662, 665 (Mo.App.2001), *overruled on other grounds by Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220 (Mo. banc 2003). In conducting that review, we may only reverse if we conclude that any of the following three grounds are met: (1) the Commission acted without or in excess of its powers; (2) the award was produced by fraud; (3) the award is not supported by the facts found by the commission; or (4) there was insufficient competent evidence in the record to warrant the award. *Kerns v. Midwest Conveyor*, 126 S.W.3d 445, 450 (Mo. App.2004).

Appellants' challenge to the Commission's award is based upon the last of those four grounds. With regard to such challenges, we conduct our review based upon the whole record. *See id.* We do not view the evidence in the light most favorable to the award. *See Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003). We must affirm if we conclude that "there is sufficient competent and substantial evidence to support the award." *Id.*

While mental injuries arising from employment related stress are compensable, a claimant must establish that the stress is, indeed, work related and that the stress placed on the claimant "was extraordinary and unusual." *Williams v. DePaul Health Ctr.*, 996 S.W.2d 619, 627 (Mo.App.1999), *overruled on other grounds by Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220 (Mo. banc 2003). The determination of whether work related stress was extraordinary and unusual is made upon "objective standards and actual events." *Id.* Specifically, the claimant must establish that the work related stress was extraordinary and unusual, as compared to "the stress encountered by employees having similar positions, regardless of employer, with a focus on evidence of the stress encountered by similarly situated employees for the same employer." *Id.* at 628.

The workload of the Grandview facility increased considerably after Pride reorganized and restructured its operations across the country. The major feature of the reorganization was that more of its stores ceased doing any laundry or dry cleaning work in-house, but instead sent that work out to company "production" facilities, such as the one managed by Carnal. The increased workload increased the manpower demands on the production facilities, such that employees had to work longer hours to keep up with the volume of work, up to fourteen hours a day, six days per week. The increased workload also caused equipment to break down more frequently.

Pride argues that this cannot be a factor supporting an award, as all of its Kansas City area facilities experienced similar increases in workload. Essentially, Pride's contention is that the increase in work demands occurred throughout its local facilities, and that the added demands on Carnal were neither unusual nor extraordinary, as compared to other individuals holding similar positions in the company.

Pride's arguments, however, ignore the substantial evidence supporting Carnal's claims that she was faced with unique circumstances that were not shared by her fellow plant managers. While much of that evidence was disputed by Pride, we cannot reverse merely because there was a conflict in the evidence. Instead, Pride must demonstrate that the Commission's

award was contrary to the overwhelming weight of the evidence. *See Hampton,* 121 S.W.3d at 223.

Upon review of the whole record, we conclude that the Commission's award was supported by substantial evidence and was not against the overwhelming weight of the evidence. First, there was evidence that the Grandview facility in which Carnal worked was in poor condition, compared with Pride's other local production plants. There was testimony that the building was poorly ventilated and dilapidated, as compared to the Broadmoor facility. The Grandview facility also had much older equipment and did not have as much capacity as the Broadmoor facility. There was evidence that these working conditions contributed to employee morale problems and a higher turnover rate compared to other facilities. While these factors placed additional stresses upon all the employees of the Grandview production facility, it was a factor which distinguished Carnal from the other production plant managers in the Kansas City area.

Second, Carnal faced a unique situation as compared to Pride's other production plant managers, in that her supervisor was her ex-husband, Dennis Dye. There was testimony that there was a great deal of animosity in the working relationship between Carnal and Dye. Dye treated Carnal different than other management employees, placing more demands on her and using harsh language with her. In addition, Carnal described Dye's treatment of her as indifferent, demanding, and uncaring. While Dye denied treating Carnal differently than any other employee, the Administrative Law Judge found his testimony to be less than credible.

While not expressly relied upon by the ALJ, we also note that there was other evidence that circumstances at the Grandview facility placed Carnal under additional stress compared to her colleagues at other facilities. There was evidence that the Grandview facility had a higher personnel turnover rate compared to Pride's other Kansas City area facilities. This required her to spend more time helping out with production, in order to compensate for the lack of manpower, in addition to her managerial responsibilities. While this was not necessarily unusual for a plant manager, it did require her to perform duties in violation of work restrictions placed on her due to a prior work-related injury.

The Commission's findings that Carnal experienced extraordinary and unusual work related stress that led to her injury were supported by sufficient and competent evidence. While Pride presented evidence that differed from the evidence adduced by Carnal, we cannot conclude on the record before us that the Commission's findings were contrary to the overwhelming weight of the evidence. Consequently, we hold that the award was supported by competent and substantial evidence upon the whole record and affirm the award. *See Hampton,* 121 S.W.3d at 224.

Pride's sole point on appeal is denied and the Final Award in favor of Carnal is affirmed.

PAUL M. SPINDEN, Presiding Judge, and LISA WHITE HARDWICK, Judge, concur.